**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**HARTFORD DIVISION**

| | | | |
|---|---|---|---|
| **IN RE:** | ) | **CASE NO.** | **16-20790 (JJT)** |
| | ) | | |
| **KRISTIN S. NORTON,** | ) | | |
|     **DEBTOR.** | ) | **CHAPTER** | **7** |
| | ) | | |
| **KRISTIN S. NORTON,** | ) | **ADV. PRO. NO.** | **19-02011 (JJT)** |
|     **PLAINTIFF** | ) | | |
| | ) | | |
| **V.** | ) | **RE: ECF NOS.** | **68, 69, 72, 89, 93** |
| | ) | | **102, 111** |
| **TOWN OF SOUTH WINDSOR,** | ) | | |
| **MATTHEW GALLIGAN,** | ) | | |
| **MORRIS BOREA,   AND** | ) | | |
| **ROBBIE T. GERRICK,** | ) | | |
|     **DEFENDANTS.** | ) | | |
| | ) | | |

**MEMORANDUM OF DECISION**
**ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.    INTRODUCTION

The Debtor, Kristin S. Norton ("Debtor"), initiated this Adversary Proceeding in her

underlying Chapter 7 case pursuant to 11 U.S.C. § 105 and 11 U.S.C. § 524, seeking relief for

alleged violations of the discharge injunction by the Town of South Windsor (the "Town"), its

Town Manager, Matthew Galligan**,** and the attorneys representing the Town, Morris Borea and

Robbie T. Gerrick (collectively, the "Defendants"), with respect to certain debts allegedly

discharged in bankruptcy. In the one-count Operative Complaint (*see* Third Amended

Complaint, ECF No. 69, the "Operative Complaint"), the Debtor alleges that the Town, through

the *collective actions* of Galligan, Borea, and Gerrick, wilfully violated 11 U.S.C. § 524 in an

effort to collect a discharged debt through, *inter alia*, the filing of various lawsuits against the

Debtor in both state and federal court. The Debtor now seeks summary judgment on the Operative Complaint as to liability only as to all Defendants (ECF No. 69).

In response to the Motion for Summary Judgment, the Town argues that because the subject debts were not discharged in the Debtor's underlying bankruptcy case, there can be no violation of the discharge injunction. Defs. Response, ECF No. 89, pp. 10–11. The Town also argues that its liens that attached on the Debtor's Property were municipal liens that were necessary to enforce the Town's blight ordinances under its police powers, which were excepted from a bankruptcy discharge. *Id.,* at 12.

On June 23, 2020, the Court heard oral argument on the Motion for Summary Judgment, wherein the parties were able to advance their respective positions. *See* ECF No. 113. At the conclusion of the hearing, the Court took the matter under advisement. After due consideration, and for the reasons stated herein, the Court hereby GRANTS the Debtor's Motion for Summary Judgment in part, and DENIES it in part as set forth herein.

## II.    JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a) and (b)(1). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.    SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56, which is made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a).

The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). At the summary judgment stage, the moving party must show that there are no material issues of fact, and the court must consider all facts in the light most favorable to the non-moving party. *Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017), *cert. denied*, 138 S. Ct. 1547 (2018) (*citing Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 456, (1992)). Once the moving party has met its burden, the "party opposing summary judgment . . . must set forth 'specific facts' demonstrating that there is 'a genuine issue for trial.'" *Official Comm. of Unsecured Creditors of Affinity Health Care Mgmt., Inc. v. Wellner*, 499 B.R. 246, 251 (Bankr. D. Conn. 2013) (*quoting Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009)).

The Plaintiff hereby seeks summary judgment on the Operative Complaint as to liability only as to all Defendants. In reviewing their supportive papers, it appears that the parties' disagreements largely center around whether the Town violated the Debtor's Chapter 7 discharge injunction by pursing various lawsuits against the Debtor, principally, because they disagree about whether the alleged violations lie within the scope of 11 U.S.C. § 523(a)(7), which is ultimately a question of law, not fact.

Additionally, the Court notes that, for the purpose of the Motion, the parties do not dispute whether an agency relationship existed between the Town and Town Manager Galligan or between the Town and Attorneys Borea and Gerrick, *see* Defendants' Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment (wherein the Defendants make numerous references throughout said pleading indicating that the Town acted "by and through" Defendants Borea and Gerrick); nor has it been alleged that Galligan, Borea and Gerrick (the "Non-Principal

Defendants") acted outside the scope of their employment. *See Vazquez v. Sears*, *Roebuck & Co.* (*In re Vazquez*), 221 B.R. 222, 231 (Bankr. N.D. Ill. 1998) (a creditor and its agents may both be held liable for wilful violations of the discharge injunction under general principles of agency law); *In re Salov*, 510 B.R. 720, 733 (Bankr. S.D.N.Y. 2014); *see also Maharishi School Vedic Sciences, Inc. v. Connecticut Constitution Associates Ltd. P'ship*, 260 Conn. 598, 606, 799 A.2d 1027 (2002) ("[I]t is a general rule of agency law that the principal in an agency relationship is bound by, and liable for, the acts in which his agent engages with authority from the principal and within the scope of the agent's employment.").

While the Plaintiff's Motion does attribute certain acts to certain Non-Principal Defendants, the Motion does not seek to apportion liability with any degree of specificity. Instead, the Motion specifically "seeks judgment as to liability [against all Defendants], with a later opportunity to present to the Court a detailed breakdown of . . . each and every violation that occurred." *See* Motion, p. 9. Notwithstanding that the actions of the Town through its agents support a finding of liability as to the Town, the facts as pled, as well as the arguments advanced, fail to distinctly address whether the Defendants are jointly and severally liable on the basis of their collective action, whether liability should be apportioned according to their particular acts or omissions, and whether such acts or omissions had any causal nexus to the Debtor's injuries. Thus, for the purpose of this Motion only, the Court finds fault with the Town, saving for further proceedings what liability lies ahead for the three Non-Principal Defendants, *see* Federal Rule of Civil Procedure 56(e)(2).[1]

---

[1] Accordingly, there are material questions of fact that remain as to whether each Non-Principal Defendant shares equally in the fault discussed in this Memorandum of Decision. Specifically, the salient factors in establishing the underlying nature of any liability attributable to the Town, the collective or collaborative actions of the Defendants and whether any Non-Principal Defendant bears any individual liability for the acts discussed herein will be each Non-Principal Defendants' respective scope of employment, as well as who, if anyone, instructed them to act.

IV.    BACKGROUND

This matter involves a multi-year dispute between the Plaintiff and the Town regarding the Town's enforcement of its anti-blight ordinances against the Plaintiff. Due to the lengthy litigation that has taken place regarding the occurrences alleged in the Operative Complaint, which has subsequently given rise to judicial determinations in both state and federal court, this Court will refrain from restating all but those facts that are material to the issues now under consideration.[2] Accordingly, the Court finds the following uncontested material facts:[3]

1. The Debtor is the owner of record of 460 Miller Road, South Windsor, Connecticut (the "Property"). Pl. SMF ¶ 1.

2. In May of 2012, the Property was subject to a non-related foreclosure action filed by Deutsche Bank, which, according to the Parties, subsequently resulted in a judgment of strict foreclosure against the Debtor. Defs.' Opp'n SMF ¶ 7.

3. In 2014, during the pendency of the 2012 foreclosure action, the Debtor was deemed by the Town to be in violation of the Town's ordinances for blighted conditions at the Property, where she allegedly maintained a junk yard/scrap business. *See Norton, Kristin et al, v. Matthew Galligan, et al*, 3:17-CV-00395-VAB (D. Conn. 2017) (the "District Court Action")[4], Memorandum of Decision (the "District Court Decision"), ECF No. 158, pp. 3–4.

---

[2] In establishing the relevant facts, the Court has relied upon, pursuant to the Federal Rules of Civil Procedure, the Plaintiff's Local Rule 56(a)1 Statement of Uncontested Material Facts (ECF No. 72-2, "Pl. SMF"), the Defendants' Local Rule 56(a)2 Statement of Facts in Opposition to Summary Judgment (ECF No. 91, "Defs.' Opp'n SMF") and the pleadings. In addition, the Court has taken judicial notice of publicly filed court documents related to the present proceeding, as well as matters of public record, such as the docket and decisions in the relevant Connecticut Superior Court and Connecticut District Court proceedings.

[3] To the extent that either party raised an objection in response to a statement of uncontested material fact that is, nonetheless, included herein, the inclusion of said fact represents the Court's implied overruling of the objection, whether it be that the objection was unsupported by the record or that it was not well founded according the Federal Rules of Evidence.

[4] *See* the Memorandum of Decision, *infra* Part IV, ¶ 21.

4. As a result, a blight lien was recorded against the Property on September 9, 2014 in an amount of $2,000 together with daily fines of $100 until the blight was remediated (the "2014 Lien"). Defs.' Opp'n SMF ¶ 4.

5. In February of 2016, Defendant Borea was appointed Town Attorney for the Town of South Windsor and served in that capacity until January of 2020. Defs.' Opp'n SMF ¶ 1. Defendants Borea and Gerrick, however, first became involved in matters relating to Plaintiff on behalf of the Town of South Windsor in October of 2016; prior to that time, presumptively, all matters concerning the Property were being handled by the prior Town Attorney. Defs.' Opp'n SMF ¶ 2.

6. On April 20, 2016, the Town began removing, without notice to the Debtor, the items from the Debtor's Property that it claimed constituted the blight. *See Town of South Windsor et al v. Lanata, Kristin, aka Kristin, S. Norton et al*, HHD-CV-17-6083374-S, Memorandum of Decision, Docket No. 138.00, p. 9 (describing the actions taken by the Town as a "raid").

7. The Town hired Environmental Services, Inc. to assist in removing the items, which it did over the course of three days (April 20–22, 2016). Pl. SMF, ¶ 3.[5]

8. Shortly thereafter, on May 18, 2016, the Debtor filed for bankruptcy protection under Chapter 7 of the U.S. Bankruptcy Code. *See In re Kristin Norton*, Case No. 16-20790 (the "2016 Bankruptcy"). In her Schedule D, the Debtor listed the Town as a secured creditor holding a disputed claim of $1 for the 2014 "Blight Lien." *Id*. Additionally, in her Schedule E/F, the Debtor listed the Town as a non-priority

---

[5] On May 19, 2016, Environmental Services, Inc. invoiced the Town for $26,556.80, for the services it rendered pertaining to the Town's order of remediation of the blighted conditions at the Property. Operative Complaint, Ex. 1.

unsecured creditor, holding a disputed claim of $1 for "removal costs." 2016

Bankruptcy, ECF No. 1, Schedule E/F, Item 4.15; Pl. SMF, ¶¶ 2–3.

9. On May 21, 2016, the Bankruptcy Court Clerk's Office sent notice to the Town

informing it of the Debtor's 2016 Bankruptcy. 2016 Bankruptcy, ECF No. 4. The

Town did not file a proof of claim in the case, nor did it file an objection to the

Debtor's characterization of the debt, or a motion to determine the

dischargeability of its debt. *See id.*

10. On August 17, 2016, the Plaintiff received her Order of Discharge from the

Bankruptcy Court (Nevins, J.). Pl. SMF ¶ 4 The discharge order entered by the

Court, at page 2, specifically provided that "some debts are not discharged . . .

examples of debts that are not discharged . . . debts for most fines, penalties,

forfeitures, or criminal restitution obligations . . . ." Defs.' Opp'n SMF ¶ 39.

11. On September 27, 2016 the Town, acting through Defendant Galligan, recorded a

Certificate of Lien (the "2016 Lien") against the Property in the amount of

$26,556.80 for the removal costs incurred on April 20–22, 2016. The 2016 Lien

provides that it is for "actual costs expended by the Town of South Windsor to

remedy the blighted conditions on said property as provided for in Section 50-91

et seq. of the Code of Ordinances of the Town of South Windsor . . . arising from

the ongoing violations of said ordinance . . . ." *See* Pl. SMF ¶5; Defs.' Opp'n

SMF ¶ 5.

12. With respect to the 2012 foreclosure of the Property, on or about October 26,

2016, counsel for Deutsche Bank contacted Galligan in order to negotiate

resolution and/or payment of municipal tax and the 2014 Lien and the 2016 Lien that had been recorded against the Property. Defs.' Opp'n SMF ¶ 3.

13. The Town was not able to reach an agreement with Deutsche Bank regarding payment of the 2014 Lien and the 2016 Lien or said taxes. Defs.' Opp'n SMF ¶ 8.

14. Thereafter, Deutsche Bank moved to open and vacate the judgment of strict foreclosure on the Property, which was subsequently granted on June 5, 2017. Defs.' Opp'n SMF ¶ 9.

15. At no time during the foreclosure negotiation with Deutsche Bank did the Plaintiff raise the issue of the 2016 Lien having been discharged. Defs.' Opp'n SMF ¶ 10.

16. After the judgment of strict foreclosure was opened and vacated, the Town elected to, among other things, foreclose on the 2014 Lien and the 2016 Lien on the Property. Defs.' Opp'n SMF ¶ 11.

17. By complaint dated October 20, 2017, the Town, acting through Borea and Gerrick, brought a lawsuit against the Plaintiff in Hartford Superior Court seeking to foreclose on the 2014 Lien and the 2016 Lien. *See Town of South Windsor* v. *Kristin Lanata aka Kristin Norton, et al*, HHD-CV17-6084015-S ("State Action #1"); Pl. SMF ¶ 6; Defs.' Opp'n SMF ¶ 12.[6]

18. By complaint dated October 20, 2017, the Town, acting through Borea and Gerrick, brought a second civil action against the Debtor in Hartford Superior Court, seeking monetary damages and injunctive relief that resulted from the 2014 Lien, along with cleanup/removal costs incurred on April 20 – 22, 2016, which

---

[6] The Debtor (defendant in the State Action #1) filed her Answer and Special Defenses on June 8, 2018. Borea Decl. at ¶11. Defs.' Opp'n SMF ¶ 13. Said Answer and Special Defenses did not claim that either lien had been discharged, nor mentioned it in any other context. Defs.' Opp'n SMF ¶ 14.

related to the 2016 Lien. *See Town of South Windsor, et al v. Kristin Lanata aka Kristin Norton, et al*, HHD-CV17-6083374-S ("State Action #2"); Pl. SMF ¶ 7; Defs.' Opp'n SMF ¶ 15.

19. In the Amended Complaint in State Action #2, the Town's prayer for relief specifically requested: "(1) A temporary injunction ordering the Defendants to perform immediately the corrective actions pursuant to the Notices of Violation and Cease and Desist Order; (2) A fine of $100 per day as provided for in Article IV, Section 50 of the Code of the Town of South Windsor; (3) A fine of $100 per day as provided for in General Statutes § 8-12; (4) A fine of $250 per day as provided for in General Statutes § 7-148o; (5) Costs of this Action; (6) Attorney's fees; and (7) Such other and further relief as the Court deems equitable." State Action #2, Amended Complaint, p. 8; Defs.' Opp'n SMF ¶ 17.

20. State Action #2, however, did not seek to foreclose on either the 2014 Lien or the 2016 Lien. Defs.' Opp'n SMF ¶ 16.

21. In March 2017, the Debtor brought a civil rights action against the Town in the United States District Court for the District of Connecticut, claiming that the Town had violated her constitutional rights by removing personal property from the Property without a warrant, court order or notice of any kind. *See* District Court Action, Second Amended Complaint, ECF No. 51.

22. During the pendency of State Action #1, State Action #2 and the District Court Action, the Debtor, through her counsel, entered into a stipulation which contained timelines to clean up the Property. Defs.' Opp'n SMF ¶ 19. The stipulation was initially entered into in December 2017 and was subsequently

amended in March 2018. Defs.' Opp'n SMF ¶ 20. The Debtor, however, failed to meet the terms of the stipulations and a Motion for Contempt was filed by the Town on May 9, 2018. Defs.' Opp'n SMF ¶ 21.

23. Despite the foregoing, on July 31, 2018, Borea and Gerrick, along with the Plaintiff and her counsel, met at Borea's office to discuss a resolution to all pending claims pertaining to the Debtor and the Property. Defs.' Opp'n SMF ¶ 22. No such resolution was reached. *Id.*

24. Thereafter, in connection with the District Court Action, on August 20, 2018, the Town, acting through Borea and Gerrick, filed an allegedly compulsory counterclaim (the "Compulsory Counterclaim") against the Debtor seeking to recover the $26,556.80 clean-up cost associated with the 2016 Lien. The Town, through the Compulsory Counterclaim, also sought to use its claim for clean-up costs as a set off for any claim against the Town by the Plaintiff in that action. Pl. SMF ¶ 8; Defs.' Opp'n SMF ¶ 30.[7]

25. Specifically, the Compulsory Counterclaim sought "to collect the debt resulting from said blight violations on the subject Property and subsequent fines and *for the costs expended to remediate the subject Property*." See District Court Action, ECF No. 71, p. 12 (emphasis added); Defs.' Opp'n SMF ¶ 31.

26. In connection with the District Court Action, on September 4, 2018, the Town, acting through Borea and Gerrick, also filed a third-party complaint (the "Third-Party Complaint") against various other parties, excluding the Debtor, with

---

[7] According to statements made on the record by counsel, despite bringing similar actions in the Connecticut Superior Court, the Town re-asserted those same claims in the District Court Action because it sought a global resolution in the Connecticut District Court regarding all matters pertaining to the Plaintiff.

interests in the Property, seeking to subordinate those interests to its municipal liens, lay claim to any insurance proceeds that resulted from a fire loss sustained by the Debtor in order to satisfy its municipal liens and take possession of the Property. Pl. SMF ¶¶ 9–10.

27. Count One of the Third-Party Complaint provides that the Town "brings this action to collect the debt . . . and costs expended to remediate the Subject Property." Pl. SMF ¶ 9. Count Two provides that the Town seeks to foreclose against the Subject Property as to the 2016 Lien. Pl. SMF ¶ 10. Count Three provides that the Town brings an action against Select Portfolio Servicing, Inc. ("Select") who, on behalf of Deutsche Bank, services Plaintiff's mortgage on the Subject Property, with respect to certain insurance proceeds held by Select. Pl. SMF ¶ 11.[8]

28. Deutsche Bank filed a motion to dismiss the action, claiming that the 2014 Lien and 2016 Lien were invalid for failing to provide sufficient notice to the bank. Defs.' Opp'n SMF ¶ 32.

29. In State Action #2, on January 30, 2019, approximately one week prior to trial, Defs.' Opp'n SMF ¶ 35; Debtor's counsel communicated by email to Borea and Gerrick that any attempt to collect a debt that arose on or before the Plaintiff filed the 2016 Bankruptcy was a violation of the Court's Order of Discharge. Defendants Borea and Gerrick were sent a copy of Debtor's bankruptcy petition and Order of Discharge. Pl. SMF ¶ 12.

---

[8] After Plaintiff's house was destroyed by a post-petition fire, her insurance carrier tendered her insurance proceeds to Select. Pl. SMF ¶ 11.

30. The following day, on January 31, 2019, the Plaintiff filed her Answer and Special Defenses to State Action #2, wherein the Order of Discharge was raised as a special defense. On February 1, 2019, the Town denied the same. Pl. SMF ¶ 13.

31. Prior to Borea's review of the January 30, 2019 email advising him that there was an issue with the blight liens having been discharged in the 2016 Bankruptcy, Defs.' Opp'n SMF ¶ 34; there had been no indication by the Debtor that she believed that the debt underlying the 2014 Lien and the 2016 Lien had been discharged. Defs.' Opp'n SMF ¶ 33.

32. Based on Borea's interpretation of the Order of Discharge and his alleged legal research related to the dischargeability of the 2014 Lien and 2016 Lien, he determined that the liens had not been discharged. Defs.' Opp'n SMF ¶ 58.

33. It was Borea's opinion that the 2014 Lien and 2016 Lien were not discharged by the bankruptcy because they were secured debts that involved taking action against the Property, not the Debtor in her personal capacity. Defs.' Opp'n SMF ¶ 37.

34. Borea was also of the opinion that both 2014 Lien and 2016 Lien were not discharged because they were debts that resulted from fines or penalties which would not have been discharged in the 2016 Bankruptcy. Defs.' Opp'n SMF ¶ 38.

35. On February 6–8, 2019, State Action #2 went to trial at Hartford Superior Court. Pl. SMF ¶ 13; Defs.' Opp'n SMF ¶ 43.

36. During closing arguments in State Action #2, Defendant Borea advised the Court that the 2016 Lien would be litigated in the District Court Action via the Town's

Compulsory Counterclaim, and that any claims regarding the 2016 Lien before the Superior Court in State Action #2 were being withdrawn. Defs.' Opp'n SMF ¶ 44.

37. After the conclusion of the trial, in its Memorandum of Decision, the Superior Court ruled in favor of the Town and found that there had been a blighted situation on the Property and that zoning violations had occurred. Defs.' Opp'n SMF ¶ 45.

38. With regard to the 2014 Lien, the Court found that the Town did not follow the proper notice procedures in perfecting its lien and therefore declined to award any damages.[9] Defs.' Opp'n SMF ¶ 46. With regard to subsequent zoning violations, the Court found a wilful violation beginning in February 2017 and awarded the Town $125,000 in accrued fines. Defs.' Opp'n SMF ¶ 47.

39. The Connecticut Superior Court made no findings with respect to the 2016 Lien or the underlying amounts due. *See* State Action #2, Memorandum of Decision, Docket No. 138.00.

40. By application with the Superior Court dated February 22, 2019, the Court awarded the Town Attorney's legal fees, in the amount of $51,674, plus costs of $1,039.18. Pl. SMF ¶ 14; Defs.' Opp'n SMF ¶ 48.

41. The Debtor thereafter filed an appeal of that decision on May 21, 2019, Defs.' Opp'n SMF ¶ 49; the Town, however, decided not to file a cross-appeal of the

---

[9] According to the Superior Court's Memorandum of Decision, it would not impose fines for the 2014 Lien "because if a town wants to collect thousands of dollars from a citizen it's only fair to require that town be sure the citizen has actually received the notice of the violation and that the town may seek penalties in court. And given the totality of the circumstances the court declines to rely . . . on the mailbox rule presumption to find that Norton got notice simply because the notice was sent. The balance of equities disfavor[s] it." State Action #2, Memorandum of Decision, Docket No. 138.00, p. 9.

Superior Court's decision declining to award fines for the blight violations associated with the 2014 Lien. Defs.' Opp'n SMF ¶ 50. The Town's decision to not file a cross appeal of the Superior Court's decision was allegedly based on the Town's understanding that the first mortgage on the Property held by Deutsche Bank had an outstanding balance of approximately $600,000 and that there was no equity in the Property. Defs.' Opp'n SMF ¶¶ 55–56.

42. On May 21, 2019, the Town withdrew State Action #1 against all defendants, Defs.' Opp'n SMF ¶ 52; and on May 24, 2019, the Town thereafter filed releases of both the 2014 Lien and the 2016 Lien on the land records. Defs.' Opp'n SMF ¶ 51.

43. On August 26, 2019, the Town stipulated to a dismissal of its Third-Party Complaint in the District Court Action with regard to Deutsch Bank. Defs.' Opp'n SMF ¶ 53.

44. On August 26, 2019, the Town also withdrew its objection to Plaintiff's Motion to Strike its Compulsory Counterclaim, which had been filed on September 12, 2018, for reasons allegedly not related to the Debtor's bankruptcy discharge. Defs.' Opp'n SMF ¶ 54.

V.    DISCUSSION

a.    CIVIL CONTEMPT STANDARD

"The Chapter 7 discharge 'releases the debtor from *personal liability* for her pre-bankruptcy debts.'" *In re Albert-Sheridan*, 960 F.3d 1188, 1192 (9th Cir. 2020) (*citing In re Ybarra*, 424 F.3d 1018, 1022 (9th Cir. 2005)) (emphasis added). In relevant part, Section 524 of the Bankruptcy Code provides that a discharge in bankruptcy operates as an injunction against

14

any action "to collect, recover or offset any such debt as a personal liability of the debtor[.]" 11 U.S.C. § 524(a)(2). One of the fundamental principles of bankruptcy law is that a bankruptcy discharge enables the honest but unfortunate debtor to receive a fresh start, *see Marrama v. Citizens Bank*, 549 U.S. 365, 367 (2007), which is achieved principally through the § 524 discharge injunction protecting debtors from creditors' attempts to collect discharged debts after bankruptcy.

The United States Supreme Court recently held that a party may be held liable for civil contempt for violating the discharge injunction "when there is no objectively reasonable basis for concluding that the creditor's conduct might be lawful under the discharge order." *Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019). In reaching this conclusion, the Court reaffirmed that, despite the typical discharge order lacking specificity in most instances, the same "traditional civil contempt principles apply . . . to the bankruptcy discharge context." *Id*., at 1802. The *Taggart* Court thus emphasized that, "Congress, however, has carefully delineated which debts *are* exempt from discharge. *See* §§ 523(a)(1)–(19). Under the fair ground of doubt standard, civil contempt therefore may be appropriate when the creditor violates a discharge order based on an *objectively unreasonable understanding* of the discharge order or *the statutes that govern its scope." Id*., at 1802 (emphasis added).

While the Court in *Taggart* concluded that the standard for contempt of the discharge injunction is an objective one, it also noted that "a party's record of continuing and persistent violations and persistent contumacy justif[ies] placing the burden of any uncertainty in the decree . . . on [the] shoulders of the party who violated the court order." *Id*. (citation omitted; internal quotation marks omitted) (*citing McComb* v. *Jacksonville Paper Co.*, 336 U.S. 187, (1949)); *see also Grogan v. Garner*, 498 U.S. 279, 291 (1991).

b. ANALYSIS

i. *11 U.S.C. § 523(a)(7)*

"A debtor is entitled to a discharge of all pre-petition debts except for nineteen categories of debts set forth in the Code." *In re Albert-Sheridan*, *supra*, 960 F.3d at 1192. In determining whether a debt has been discharged, "[c]ourts construe discharge exceptions narrowly, and a [party] seeking to except a debt from the discharge must demonstrate that the relevant facts come 'squarely' within one of the statutory exceptions." *In re Morgenstern*, No. AP 16-1390-BAH, 2017 WL 6728491, at \*3 (*citing Palmacci v. Umpierrez* (*In re Palmacci*), 121 F.3d 781, 786 (1st Cir. 1997)).

The statutory exception at issue in the present case excepts debts that are incurred by a debtor as "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and [that] is not compensation for actual pecuniary loss." 11 U.S.C. § 523(a)(7). "Section 523(a)(7) expressly requires three elements for a debt to be non-dischargeable. The debt must (1) be a fine, penalty, or forfeiture; (2) be payable to and for the benefit of a governmental unit; and (3) not constitute compensation for actual pecuniary [loss]." *In re Albert-Sheridan*, *supra*, 960 F.3d at 1193. The present Motion for Summary Judgment, therefore, turns on the application of the aforementioned facts to prong 3, or in other words: whether the claims underlying the Liens constitute claims for "compensation for actual pecuniary loss."

Courts addressing the issue of the "not compensation for actual pecuniary loss" element of § 523(a)(7), have concluded that courts shall "'look to the context in which the penalty [was] imposed to determine whether its purpose is truly compensatory.' [For example,] [c]ourts have consistently found that fines or penalties actually assessed against debtors for violating environmental protection laws constitute a 'fine, penalty, or forfeiture' within the meaning of

§ 523(a)(7) where such civil and criminal penalties serve a 'punitive' or 'rehabilitative' purpose, rather than serve as compensation to the government." *Matter of Jenkins*, 608 B.R. 565, 571 (Bankr. N.D. Ala. 2019) (footnotes and internal quotation marks omitted).

Prior decisions of the Connecticut Bankruptcy Courts, as well as decisions from other bankruptcy courts reaching similar conclusions regarding the punitive nature of fines, have largely relied on the United States Supreme Court case *Kelly v. Robinson*, 479 U.S. 36 (1986), which held that § 523(a)(7) was ambiguous with respect to what constituted compensation for actual pecuniary loss. Specifically, the *Kelly* Court held that, in the context of *criminal restitution* paid to a state agency as a condition of probation, even though not paid for the benefit of the governmental agency and measured specifically by the victim's actual pecuniary loss, such a payment could be characterized as non-dischargeable under § 523(a)(7). The circumstances that led to the Supreme Court in *Kelly* to hold as such, however, bear further examination.

In *Kelly*, the Supreme Court held "that a restitution obligation, imposed as part of a state criminal sentence, was not dischargeable in bankruptcy . . . [and] reached this conclusion by *interpreting* § 523(a)(7) of the Code . . . as 'preserv[ing] from discharge any condition a state criminal court imposes as part of a criminal sentence.'" *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 244 (1989) (citation omitted, emphasis added). According to subsequent Supreme Court analysis of *Kelly*, "[Section 523(a)(7)] was 'subject to interpretation' . . . [which caused the Court to consider] both legislative history and pre-Code practice in aid of that interpretation. . . . [I]n determining that Congress had not intended to depart from pre-Code practice in this regard . . . [the Supreme Court in *Kelly*] concluded that the pre-Code practice had been animated by 'a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings' . . . which has its source in the basic principle of our

federalism that 'the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief.'" *Id.,* at 244–245 (citations omitted).

Thus, "[*Kelly*] involved a situation where bankruptcy law, under the proposed interpretation, was in clear conflict with state or federal laws of great importance." *Id*., at 245. As the *Kelly* Court itself highlighted, "[u]nlike an obligation which arises out of a contractual, statutory or common law duty, here the obligation is rooted in the traditional responsibility of a state to protect its citizens by enforcing its criminal statutes and to rehabilitate an offender by imposing a criminal sanction intended for that purpose." *Kelly v. Robinson*, *supra*, 479 U.S. at 52 (*citing approvingly to In re Pellegrino*, 42 B.R. 129, 133 (Bankr. D. Conn. 1984)).

In revisiting this issue, the 9th Circuit Court of Appeals recently held that the basis on which *Kelly* was decided, in addition to its "untether[ing] statutory interpretation from the statutory language," *In re Scheer*, 819 F.3d 1206, 1210 (9th Cir. 2016), has likely "led to considerable confusion among federal courts and practitioners about section 523(a)(7)'s scope." *In re Albert-Sheridan*, *supra*, 960 F.3d at 1195 (holding that the plain text of § 523(a)(7) precluded discovery sanctions from the discharge exemption). "Like other relics of the 1980s . . . *Kelly's* atextual interpretative method should not come back into fashion. . . . *Kelly* was animated by a 'long history' of judicial exceptions for criminal restitution payments in discharge statutes and a concern for 'disturb[ing] state criminal proceedings.'" *Id*. (citations omitted) ("Thus, we have sought to cabin *Kelly's* reach and refused to expand its rationale to an arbitration award requiring an attorney to refund a client's funds. . . . [and] have also declined to extend *Kelly* to except criminal restitution payments under the Code's preference statute, 11 U.S.C. § 547(b)."). This Court agrees with the Ninth Circuit's analysis of *Kelly* and its assessment of its continued

precedential value. *See United States v. Ron Pair Enterprises, Inc.*, *supra*, 489 U.S. at 242 ("except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters . . . [t]he plain meaning of legislation should be conclusive." [internal quotation marks omitted]).

Nonetheless, in considering the issue, this Court, like others considering the issue, has weighed the particular circumstances surrounding the penalty assessed, the nature of the state's interest and the competing interest of federal bankruptcy law. *See In re Schaffer*, 515 F.3d 424, 429 (5th Cir. 2008). In doing so, this Court has adhered to the accepted principle that interpretations of exceptions to a bankruptcy discharge should be construed *narrowly*. *Id.* (holding that, in light of the relevant state statute, interpreting an "assessed cost" as a fine or penalty under § 523, would not be a narrow reading of the bankruptcy code) ("[c]onsistent with the Code's basic purpose of relieving the honest debtor from the weight of oppressive indebtedness and permitting him to start afresh, exceptions to discharge are to be construed narrowly." [footnote and internal quotation marks omitted]).

In the present case, the underlying state interest, while not immaterial, is outweighed by the Bankruptcy Code's fundamental purpose of relieving the honest debtor from the weight of oppressive indebtedness in order to permit a fresh start. In reaching this conclusion, the Court has considered the State's interest in authorizing towns to enforce zoning and public health ordinances, the Town's actual efforts in pursuit of those interests, the relevant circumstances surrounding the Liens and how those circumstances bear on whether the underlying debts constitute "compensation for actual pecuniary loss," and concludes that the circumstances are materially distinguishable from those circumstances identified in *Kelly*. In sum, this Court's

consideration of the issue simply does not require the same type of contortions and acrobatics applied in the *Kelly* decision. A plain reading of § 523(a)(7), therefore, will control.

> ii.   *Section 50-90 et seq. of the Code of the Town of South Windsor, Conn. Gen. Stat. § 7-148o and Conn. Gen. Stat. § 8-12*

Turning to the relevant municipal ordinances and state statutes at issue, Section 50-99(a) of the Code of South Windsor (the "Code"), which describes the penalties associated with violations of the Town's blight ordinances, provides:

> (1) Each violation of this article shall be considered a separate municipal offense. (2) Each day any violation continues shall constitute a separate offense. (3) Each separate offense under this ordinance shall be punishable by a *fine* of $100.00 payable to the Town of South Windsor. (Emphasis added).

Additionally, Section 50-99(b) of the Code, which is entitled "Enforcement," further provides, in relevant part, that:

> [T]he town manager is authorized to initiate legal proceedings in the superior court for the immediate correction of the violation(s), collection of any *penalties*, and the recovery of *all costs including costs of remedial action*, court [costs] and the reasonable attorney's fees incurred by the Town of South Windsor to enforce this ordinance. (Emphasis added).

Next, Conn. Gen. Stat. § 7-148o, which is entitled "Wilful violation of ordinances concerning prevention and remediation of housing blight," provides, in relevant part, that:

> [A]ny person who, after written notice and a reasonable opportunity to remediate blighted conditions, wilfully violates any regulation adopted pursuant to subparagraph (H)(xv) of subdivision (7) of subsection (c) of section 7-148 concerning the prevention and remediation of housing blight shall be fined by the state not more than two hundred fifty dollars for each day for which it can be shown, based on actual inspection of the property on each such day, that the blighted conditions continued to exist after written notice to the owner or occupant as provided in this section, and the expiration of a reasonable opportunity to remediate.

Lastly, Conn. Gen. Stat. § 8-12, which is entitled "Procedures when regulations are violated," provides, in relevant part, that:

> The owner or agent of any building or premises where a violation of any provision of such regulations has been committed or exists . . . shall be fined not less than ten dollars or more than one hundred dollars for each day that such violation continues; but, if the offense is wilful, the person convicted thereof shall be fined not less than one hundred dollars or more than two hundred fifty dollars for each day that such violation continues, or imprisoned not more than ten days for each day such violation continues not to exceed a maximum of thirty days for such violation, or both.

iii.  *State Action #2*

In State Action #2, the Town sought relief against the Debtor in her personal capacity in the form of money damages pursuant to Section 50-90 et seq. of the Code, Conn. Gen. Stat. § 7-148o and Conn. Gen. Stat. § 8-12, the enforcement of which is seated in the Town's authority to act on matters pertaining to zoning and that of public health and safety. Specifically, in the Amended Complaint in State Action #2, the Town's prayer for relief requested, in pertinent part: "(2) A fine of $100 per day as provided for in Article IV, Section 50 of the Code of the Town of South Windsor; (3) A fine of $100 per day as provided for in General Statutes § 8-12; (4) A fine of $250 per day as provided for in General Statutes § 7-148o . . . ." State Action #2, Amended Complaint, p. 8.

Notably absent from the Amended Complaint in State Action #2 is any request for relief as to the 2016 Lien. While it is true that the 2016 Lien is referenced in the recitals of the Amended Complaint, the prayer for relief does not seek any form of damages associated with it or the remediation of the Property. *See* Connecticut Practice Book § 10-20, Conn. Gen. Stat. § 52-91 (a party seeking legal relief must state the specific amount sought in the complaint). This stands in contrast with the Town's subsequent efforts in the District Court Action where the Town specifically sought to collect the costs associated with the remediation of the blight conditions at the Property. *See* Part IV of this Memorandum of Decision, ¶ 19; *see also* Compulsory Counterclaim, p. 12, ¶¶ 24–25 ("Pursuant to Connecticut General Statutes § 7-

21

148(c)(7)(H)(xv), Article IV § 50-91 et. seq. of the South Windsor Code of Ordinances and C.G.S. § 49-73b(a), the Town brings this action to collect the debt resulting from said blight violations on the subject Property and subsequent fines *and for the costs expended to remediate the subject Property*." [emphasis added]). And while "a violation of § 524(a)(2) may still be found if the debtor proves the creditor acted in such a way as to 'coerce' or 'harass' the debtor improperly,' i.e., so as to obtain payment of the discharged debt," *In re Paul*, 534 F.3d 1303, 1308 (10th Cir. 2008) (internal quotation marks omitted), even under a facially proper legal action, such a determination needs to be proved by clear and convincing evidence. *Id.*

Here, the Amended Complaint in State Action #2 set forth the legal basis for the action against the Plaintiff, which was limited to the flat-rate fines associated with violations of the Town's anti-blight ordinance, Conn. Gen. Stat. § 7-148o and Conn. Gen. Stat. § 8-12. The relief requested by the Town was exclusively sought pursuant to the 2014 Lien, which falls squarely within the meaning of "fine, penalty, or forfeiture" under § 523(a)(7). The undisputed facts presented here do not require the Court to look beyond the text of Section 50-90 et seq. of the Code, Conn. Gen. Stat. § 7-148o and Conn. Gen. Stat. § 8-12 to make this determination. Simply put, those statutes allow the Town and a court to penalize violations of anti-blight and zoning ordinances with flat-rate monetary sanctions for each day a violation persists, which by their very nature are not tied to any *particular* pecuniary loss.[10]

In light of these flat-rate fines assessed against the Debtor, which form the basis of the 2014 Lien, a plain reading of § 523(a)(7) compels the Court to find that the damages sought by

---

[10] Although the prayer for relief contains the time worn phrase, "[any] further relief as the Court deems equitable," that request, under the undisputed facts of this case, does not provide a sufficient objective basis for a finding of civil contempt. *See In re Cantrell*, 605 B.R. 841, 857 (Bankr. W.D. Mich. 2019) (concluding that because the servicer's correspondence with the debtor regarding its mortgage did not specifically reference the discharge debts, those communications could not be characterized as an attempt to collect said debt).

the Town in the Amended Complaint cannot be accurately characterized as "compensation for actual pecuniary loss." Accordingly, the Court concludes that the relief sought in State Action #2 meets the criteria for an exception from the discharge pursuant to § 523(a)(7). *See In re Morgenstern*, No. AP 16-1390-BAH, 2017 WL 6728491, at *4. While the Connecticut Superior Court ultimately ruled against the Town regarding the enforceability of 2014 Lien in February 2019, absent such a ruling during the pendency of that case, and believing it had a presumptively valid pre-petition lien secured by the Property and a proper legal basis to seek damages from the Debtor in her personal capacity, the Town's pursuit of its remedies under the 2014 Lien was not objectively unreasonable, and, thus, does not rise to the level for civil contempt as delineated in *Taggart*.

Viewing the material facts in the light most favorable to the Town, the Court concludes, to the extent that the Plaintiff's Motion for Summary Judgment seeks judgment for the Town's actions taken with respect to the 2014 Lien and State Action #2, that relief is hereby DENIED. *See Conn. Ironworkers Emp'rs Ass'n v. New England Reg'l Council of Carpenters*, 869 F.3d 92, 98–99 (2d Cir. 2017).

### iv.  Recording the 2016 Lien and the District Court Compulsory Counterclaim

Moving to the Plaintiff's main argument; the Plaintiff contends that the recording of the 2016 Lien on the Property and its subsequent prosecution in the various actions brought by the Town, was a violation of the discharge injunction because: (1) the Town had notice of the 2016 Bankruptcy and the Debtor's corresponding discharge; (2) the remediation costs were not exempt under 11 U.S.C. § 523(a)(7); and (3) the Town knowingly recorded the 2016 Lien and pursued various actions in state and federal court on the basis of it. In response, the Town argues that the recording of the 2016 Lien on the Property was a proper use of its inherent police power and that

the subsequent legal actions brought against the Debtor did not violate the discharge injunction because the subject debt was non-dischargeable pursuant to 11 U.S.C. § 523(a)(7). After an examination of these arguments, the Court must agree with the Debtor.

1.    Compensation for Actual Pecuniary Loss

In support of its actions, the Town specifically argues that its claim underlying the 2016 Lien was excepted from the discharge, based upon the grounds that "[t]his Court has previously held that fines and penalties[,] such as fines imposed in favor of Inland Wetlands and Watercourses Agency for wilful violation of regulations . . . were not dischargeable." Defs. Response, pp. 10–11 (*citing In re Jimmo*, 204 B.R. 655 (Bankr. D. Conn. 1997); *In re King*, 2017 WL 1283445, at *3–4 (Bankr. D. Conn. Apr. 4, 2017)). While the Town is correct in that a Connecticut Bankruptcy Judge has previously ruled as such, this Court concludes that these cases are materially and clearly distinguishable from the case at hand.

Here, the Town plainly seeks to collect a prepetition debt for *actual costs incurred by the Town* for its remediation of the blighted conditions at the Plaintiff's Property. In line with this characterization, the 2016 Lien recorded on the land records indicates that it pertains specifically to remediation costs borne by the Town. This irrefutable characterization is further supported by the invoice from Environmental Services, Inc. for the exact amount identified in the 2016 Lien. Because the underlying debt was properly included in the Debtor's 2016 Bankruptcy schedules and because the Town failed to file the 2016 Lien prior to the Debtor's discharge, the Town's claim of for $26,556.80 for remediation of the blight violations underlying the 2016 Lien, at the time of the discharge, was merely an unsecured pre-petition debt, and was, therefore, discharged in the 2016 Bankruptcy. While a lien recorded by the Town pursuant to its blight ordinances may well constitute a non-dischargeable debt pursuant to § 523(a)(7) under different circumstances,

here, at the time the Debtor's discharge was granted, no such lien had been recorded on the land records. *See* Part IV of this Memorandum of Decision, ¶ 11.

As to the additional argument that these remediation costs can serve a punitive purpose, and thus should be excepted from discharge, under the facts of this case, the Court declines to weigh the actual remediation costs here as serving a punitive function simply because the Town's anti-blight ordinance also provides for recovery based on actual costs. While the inclusion of actual costs may indeed muddy the distinction between the different types of recovery permitted under the anti-blight ordinance, when viewing the costs of the April 2016 remediation in conjunction with the flat-rate fines pursued by the Town pursuant to its anti-blight ordinance, Conn. Gen. Stat. § 7-148o and Conn. Gen. Stat. § 8-12, the distinction between the two types of recovery is sufficient for this Court to find that an assessment for remediation costs is in fact clearly a claim for "compensation for actual pecuniary loss." The Court, therefore, concludes that the distinct treatment of fines and remediation costs in the Town's own anti-blight ordinance, in addition to the Town's own characterization of the claim in the instrument recorded on the land records, is determinative that the remediation costs sought here have been discharged.

### 2.   Police Power

Next, the Town argues that *In re Phillips*, 368 B.R. 733, 742 (Bankr. N.D. Ind. 2007) and *Safety-Kleen, Inc. (Pinewood) v. Wyche*, 274 F.3d 846, 865 (4th Cir. 2001), support the proposition "that liens attached to land by municipalities to enforce the inherent police power of

the municipality related to anti-nuisance or blight ordinances are non-dischargeable." Defs. Response, ECF No. 89, p. 12.

"When a debtor files for bankruptcy, [11 U.S.C.] § 362(a) automatically stays creditor actions against the debtor that may impact the bankruptcy estate. A chief purpose of the automatic stay is to allow for a systematic, equitable liquidation proceeding by avoiding a 'chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Safety-Kleen, Inc. (Pinewood) v. Wyche*, *supra*, 274 F.3d at 864 (*citing Fidelity Mortgage Investors v. Camelia Builders, Inc*. 550 F.2d 47, 55 (2d Cir. 1976)). "However, the automatic stay does not apply to any state action 'to enforce [a] governmental unit's or organization's *police and regulatory power*, including the enforcement of a judgment other than a money judgment.' 11 U.S.C. § 362(b)(4)." *Id* (emphasis added). The invocation of police power is appropriate in situations where the automatic stay would otherwise prevent a government entity from performing critical duties that may result in irreversible consequences and public harm *during the pendency of a bankruptcy case*.

The invocation of police power, however, is not applicable under the present facts, principally because the actions taken by the Town were taken *after* the close of the Debtor's 2016 Bankruptcy case. The Town seems to argue this point, ultimately to say: that because it was operating in its municipal capacity, any prohibition relating to the pursuit of its claims against the Debtor should be stayed. This notion, however, is not founded in any law or principal known or cited to this Court. Once the Town's *unsecured pre-petition* claim was discharged, the Town was not permitted, under the color of its authority, or otherwise, to pursue or attempt to revive the discharged debt without running afoul of the discharge injunction.

While the Town argues, secondarily, that "Borea was also of the opinion that the discharge injunction only prohibited attempts to recover a debt as a *personal liability* of the debtor pursuant to 11 U.S.C. § 524(a)(2), and since the lien was against the Property, the Town was not proceeding against the debtor *personally*," Defs. Response, ECF No. 89, p. 6 (emphasis added), this Court is not convinced. *See In re Paeplow*, 972 F.2d 730, 735 (post-discharge *in rem* and *quasi in rem* actions against property are permitted *only if* the creditor has first obtained a lien against that property prior to discharge).

Because the Town did not record its interest against the Property on the land records prior to the Debtor's discharge, it could not proceed as it did by recording the 2016 Lien on the land records and by seeking damages thereto in its Compulsory Counterclaim against the Debtor without violating the discharge injunction. *Id*. Accordingly, even when viewing the uncontested facts in the light most favorable to the Town, the Court nonetheless finds that, to the extent that that Plaintiff's Motion for Summary Judgment seeks a judgment of liability as to the Town's actions taken in the District Court Compulsory Counterclaim in pursuit of the 2016 Lien, it is hereby GRANTED.

### v. State Action #1

In State Action #1, the Town sought *in rem* relief as to both the 2014 and 2016 Liens. As commonly understood, liens that have not been avoided survive the bankruptcy discharge, and lienholders may, pursuant to applicable state-law procedure, enforce them against the debtor's property after the bankruptcy case is closed. *See Johnson v. Home State Bank*, 501 U.S. 78, 82 (1991); *see also In re Scarpino*, 113 F.3d 338, 340 (2d Cir. 1997).  In the present case, the 2014 Lien, which was attached to the Property prior to the Debtor's 2016 Bankruptcy, was a debt included in Debtor's 2016 Bankruptcy, but was not the subject of a Section 522 or 523 motion in

that case. The Town's actions with respect to the 2014 Lien in State Action #1 up to the point when the Connecticut Superior Court issues its decision, as a secured creditor seeking *in rem* relief, was, thus, perfectly permissible.

The Town's actions, as an unsecured creditor seeking to foreclose on a discharged debt (the 2016 Lien), however, were not permissible. Accordingly, viewing the uncontested facts in the light most favorable to the Town, the Court concludes that, to the extent that the Plaintiff's Motion for Summary Judgment seeks a judgment of liability as to the Town's actions taken in State Action #1 in pursuit of the 2016 Lien, it is hereby GRANTED. As to the Town's actions taken in State Action #1 in pursuit of the 2014 Lien, the Motion is hereby DENIED.

### vi.  The Third-Party Complaint

With respect to the Plaintiff's contention that the Town's Third-Party Complaint is an attempt to collect a discharged debt, it is well understood that the discharge injunction prohibits a creditor's efforts to collect a discharged debt from a debtor in *the debtor's personal capacity. Id.; see also Blixseth v. Credit Suisse*, 961 F.3d 1074, 1082 (9th Cir. 2020) ("[Section] 524(e) confines the debt that may be discharged to the 'debt of the debtor'—and not the obligations of third parties for that debt—[which] conforms to the basic fact that 'a discharge in bankruptcy does not extinguish the debt itself but merely releases the debtor from personal liability. . . . The debt still exists, however, and can be collected from any other entity that may be liable.'").[11]

In the Town's Third-Party Complaint, it sought *in rem* relief in order to foreclosure on its municipal liens and to subordinate the other lienholders to its municipal liens. The prayer for

---

[11] Although a foreclosure pursuant to a superseding lien is, on its face, an *in rem* proceeding, such a proceeding may also result in *in personam* liability for a debtor due to a change in the secured status of a junior lienholder whose secured interest is converted to an unsecured debt by virtue of a subordination. In this case, because the lienholder defendants in the Third-Party Complaint were also included in the Debtor's 2016 Bankruptcy schedules, any potential modification to their secured status as a result of being subordinated by the Town's municipal liens would not generate *in personam* liability for the Debtor because any such liability was extinguished by the Debtor's discharge.

relief, however, also sought possession of the Debtor's Property. As previously stated herein, an *in rem* proceeding against a debtor's property subject to a *pre-petition un-avoided lien* isn't *typically* violative of the discharge injunction. However, the circumstances surrounding this Third-Party Complaint require further analysis.

Anomalously, despite pursuing possession of the Debtor's Property in the prayer for relief, the Town did not make the Debtor a party to the Third-Party Complaint. While it is doubtful that the Town could have foreclosed on the other lienholders without making the Debtor a party to the action, because the Town was seeking possession of the Property and because the Debtor was a record owner of the equity of redemption, for the purpose of this Court's analysis, the Debtor was an otherwise indispensable party to the Third-Party Complaint. Given that, the Town's Third-Party Complaint in the District Court Action seeking to foreclose on its municipal liens, *which included the 2016 Lien*, amounts to an attempt to collect a discharged debt from the Debtor in her *personal capacity* because, like in State Action #1, the Town was an unsecured creditor seeking to foreclose on a discharged debt. Accordingly, viewing the uncontested facts in the light most favorable to the Town, the Court concludes that, to the extent that the Plaintiff's Motion for Summary Judgment seeks a judgment of liability as to the Town's actions taken in the Third-Party Complaint in pursuit of the 2016 Lien, it is hereby GRANTED.

As for the Plaintiff's ancillary claim that the Town's efforts through the Third-Party Action to collect fire insurance proceeds was an attempt to collect a discharged debt—at this stage, the Plaintiff has not alleged sufficient material facts that would allow this Court to characterize this as an attempt to collect a debt from the Debtor in her *personal capacity*. For instance, it fails to advance material facts as to whether the Debtor was an insured, beneficiary or owner of the policy, or liable for the premiums. "Ownership of an insurance policy does not

necessarily entail ownership of the proceeds of the policy [and] . . . [p]arties may contract that someone other than the policy owner will receive the proceeds of the policy." *In re Suter*, 181 B.R. 116, 119 (Bankr. N.D. Ala. 1994) (concluding that the question of whether a secured party will be entitled to insurance proceeds as replacement for damaged collateral is a matter of state contract and insurance law) (footnote omitted). Here, the Plaintiff has not offered any form of proof that lienholders were not entitled to insurance proceeds, or that she was for that matter. This failure to provide such evidence is material in light of the policy coverage page that was attached as an exhibit to the Third-Party Complaint indicating that the first named insured under the policy is the third-party defendant mortgage servicer (Select Portfolio Servicing, Inc.), and not the Debtor. *See* Third-Party Complaint, ECF No. 73, Exhibit E. Rather, the Plaintiff has made a bare assertion that the act of seeking the insurance recovery was violative of the discharge injunction. Even viewing these facts in a manner most favorable to the movant, the Court would still not have a sufficient record to assess the material facts related to the Debtor's rights, if any, in the insurance policy. Those material facts are simply not part of this record.

Whether the Town had a proper claim for the insurance proceeds cannot be decided on the present record or the allegations in the Operative Complaint. The Court concludes that there is a genuine issue of material fact with respect to this narrow issue and, thus, the Motion for Summary Judgment, accordingly, must be DENIED.

### vii.   The Taggart Defense

Finally, the Town argues that "[e]very action taken by Borea and Gerrick, at Borea's direction, was based on reasonable interpretations of the law and the extent of the Town's police powers . . . [and was] [b]ased on Borea's interpretation of the discharge order and legal research related to the dischargeability of the blight liens . . . [suggesting] that the liens had not been

discharged." Def. Response, ECF No. 89, p. 8.  Accordingly, "[t]he actions taken by Borea and

at his direction were done so with the good faith belief that the blight liens were not discharged,"

*id.,* "[and] illustrates the fair ground of doubt concerning whether the discharge barred the

conduct of which Plaintiff now complains." *Id.*, at 16.

As stated by the United States Supreme Court in *Taggart*, "subjective intent [isn't]

always irrelevant. . . a party's good faith, *even where it does not bar civil contempt*, may help to

determine an appropriate sanction." *Taggart v. Lorenzen*, *supra*, 139 S. Ct. at 1802 (citations

omitted and emphasis added). While the Town's subjective intent and basis for its actions may

ultimately be relevant in determining the appropriate sanction, it does not bear on the objective

question of whether the acts complained of were prohibited by § 524 and, thus, whether they

constituted civil contempt. The Town's alleged good faith actions, made by and through its

agents, therefore, does not, in and of itself, act as a sufficient bulwark against the Debtor's

Complaint seeking to find it in contempt for violating the Order of Discharge. What's more, the

Town's own reading of 11 U.S.C. § 523(a)(7), as advanced and discussed herein, does not

provide a safe harbor for the Town. This Court finds that the Town has failed to sufficiently

advance a cognizable defense under *Taggart* given that, under the present facts and for the

reasons already stated herein, there is no objective reading of 11 U.S.C. § 523(a)(7), according to

the plain meaning of its terms, that would lead to the conclusion that the Town's conduct relating

to the 2016 Lien was permissible.

VI.    CONCLUSION

Under the plain meaning of the text of 11 U.S.C. § 523(a)(7), those remediation costs that

are tied directly to actual pecuniary loss suffered by a governmental unit and that are secondary

to other punitive flat-rate fines, are not the type of debt protected from a bankruptcy discharge.

The Town was sent notice from this Court of the Debtor's bankruptcy and her corresponding discharge, which is entitled to presumptive regularity and full force and effect. *See Lopes v. Gonzales*, 468 F.3d 81, 85 (2d Cir. 2006); *Holmes v. Fischer*, No. 09-CV-00829S F, 2013 WL 1309157, at *6. The Court finds that because the underlying debt regarding the 2016 Lien was not excepted from the Debtor's discharge, and that the Town had failed to record its lien as of the date of the Debtor's discharge, the Town's belated recording of the 2016 Lien, and its subsequent prosecution of a civil action against the Debtor in State Action #1 and the District Court Action (through the Compulsory Counterclaim), were inappropriate attempts to collect a discharged debt under § 524. *See Matter of Jenkins*, 608 B.R. 565, 571–72 (Bankr. N.D. Ala. 2019).

The aforesaid were not based on, and therefore excused by, an objectively reasonable reading of 11 U.S.C. § 523(a)(7) under the *Taggart* decision, as applied to the undisputed facts of this case. Accordingly, as set forth herein, this Court concludes that the Town's actions were violative of the discharge injunction and support a finding of liability against the Town and the entry of a civil contempt order for such.

The Court will entertain further proceedings on the Plaintiff's claims for damages, the collective or apportioned liability among the various Non-Principal Defendants, the liability of the Defendants related to the insurance proceeds and the terms of any civil contempt order prior to entry of a final judgment herein.

The Court will set a status conference on this matter to determine a schedule for further proceedings.

IT IS SO ORDERED at Hartford, Connecticut this 30th day of September 2020.

James J. Tancredi
United States Bankruptcy Judge
District of Connecticut